DAVID LOPEZ, ESQ. (DL-6779)
*Attorney for Plaintiffs*
171 Edge of Woods Road
P.O. Box 323
Southampton, New York  11969-0323
Tel: (631) 287-5520
Fax: (631) 283-4735
Email: DavidLopezEsq@aol.com

JAMES A. HUNTER, ESQ. (JH–1910)
*Attorney for Plaintiffs*
42 Stagecoach Road
Pipersville, Pennsylvania  18947
Tel: (484) 437-5935
Fax: (646) 462-3356
Email: hunter@hunterkmiec.com

MIRIAM TAUBER, ESQ. (MT-1979)
*Attorney for Plaintiffs*
885 Park Avenue # 2A
New York, New York  10075
Tel: (323) 790-4881
Email: MiriamTauberLaw@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CALENTURE, LLC and DEBORAH DONOGHUE, <br><br> Plaintiffs, <br><br> – v. – <br><br> B. RILEY FINANCIAL, INC. and BRYANT R. RILEY, <br><br> Defendants, <br><br> – and – <br><br> FRANCHISE GROUP, INC., <br><br> Nominal Defendant. | ECF CASE <br><br> No. 21-cv-6087 <br><br> COMPLAINT FOR RECOVERY OF SHORT-SWING PROFIT UNDER 15 U.S.C. § 78p(b) <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Calenture, LLC and Deborah Donoghue (collectively,

"Plaintiffs"), by their undersigned attorneys, plead for their complaint as follows:

**INTRODUCTION**

1.      This is an action for disgorgement under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.      Section 16 was the "original and only express 'insider' trading provision[]" of the Act.  Richard W. Jennings et al., Securities Regulation: Cases and Materials 1202 (8th ed. 1998).  It aims to "prevent[] the unfair use of information that may have been obtained by [an insider] by reason of his relationship to the issuer."  15 U.S.C. § 78p(a).

3.      Section 16 applies to the directors and officers of every issuer with a class of publicly traded equity securities.  *Id.* § 78p(a), (b).  It also applies to every beneficial owner of more than 10% of any such class.  *Id.*  Under Section 16(b), these "insiders" are required to pay over to the issuer any profit they realize from any purchase and sale of the issuer's equity securities within a period of less than six months.  *Id.* § 78p(b).  If an insider fails to disgorge this "short-swing" profit, the statute empowers the issuer, or "the owner of any security of the issuer," to bring suit to recover it.  *Id.*

4.      Liability under Section 16(b) is strict.  The profit from a short-swing transaction must be disgorged "irrespective of any intention on the part of [the insider] in entering into such transaction."  *Id.*  Recovery never depends on proof of scienter, a breach of duty, or the actual misuse of inside information.  *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).

5.      Plaintiffs are stockholders of Nominal Defendant Franchise Group, Inc. ("Franchise Group").  They bring this action against Defendant B. Riley Financial, Inc. ("B. Riley Financial") and Defendant Bryant R. Riley ("Bryant Riley" and,

collectively with B. Riley Financial, the "B. Riley Defendants"), each of whom was a beneficial owner of more than 10% of Franchise Group's common stock.  While subject to Section 16 of the Act, the B. Riley Defendants realized millions of dollars of "short-swing" profit from their purchases and sales of Franchise Group's common stock.  Under Section 16(b), this profit is now Franchise Group's lawful property, which the B. Riley Defendants are strictly liable to account for and repay.

## JURISDICTION AND VENUE

6.    Jurisdiction is conferred on this Court by Section 27 of the Act, 15 U.S.C. § 78aa, and by 28 U.S.C. § 1331.

7.    Venue lies in this District under Section 27 of the Act and 28 U.S.C. § 1401 because certain of the transactions described in paragraphs 59-71 below were executed through the facilities of The NASDAQ Stock Market LLC, a national securities exchange registered under Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.

## THE PARTIES

### The Parties to This Action

8.    Plaintiff Calenture, LLC is a limited liability company formed under the law of the State of New York with a principal place of business located in New York, New York.

9.    Plaintiff Deborah Donoghue is a natural person and resident of the State of New York.

10.     Nominal Defendant Franchise Group, Inc., which Plaintiffs refer to as "Franchise Group," is a corporation formed under the law of the State of Delaware.  At all relevant times, Franchise Group's common stock was registered under Section 12(b) of the Act, 15 U.S.C. § 78*l*(b), and listed for trading on the NASDAQ Global Market. This action is brought in the right and for the benefit of Franchise Group, which is named as a nominal defendant solely to ensure that all necessary parties are before the Court.

11.     Defendant B. Riley Financial, Inc., which Plaintiffs refer to as "B. Riley Financial," is a corporation formed under the law of the State of Delaware with a principal place of business located in Los Angeles, California.  B. Riley Financial is a full-service financial firm offering investment banking, asset management, securities brokerage, and other financial services through its subsidiaries and managed funds.  It also engages in proprietary trading for its own account.  Like Franchise Group, B. Riley Financial is a publicly traded company whose common stock is listed for trading on the NASDAQ Global Market.

12.     Defendant Bryant R. Riley, whom Plaintiffs refer to as "Bryant Riley," is the founder, namesake, and driving force behind B. Riley Financial and its subsidiaries and managed funds.  At all relevant times, Bryant Riley served as B. Riley Financial's chairman and co-chief executive officer and owned approximately one-fifth of its outstanding common stock.  He is a natural person and a resident of the State of California.

**Other Relevant Parties**

13.     B. Riley Securities, Inc. (f/k/a B. Riley FBR, Inc.) ("B. Riley Securities") is a Delaware corporation and a wholly owned subsidiary of B. Riley Financial.  According to B. Riley Financial's most recent annual report, B. Riley

Securities is the subsidiary through which the firm conducts its proprietary trading — i.e., its "trading activities for strategic investment purposes . . . utilizing the firm's capital."

14. BRC Partners Opportunity Fund, L.P. (the "Opportunity Fund") is an investment fund formed as a limited partnership under the law of the State of Delaware. At all relevant times, B. Riley Financial, through its subsidiaries, managed the Opportunity Fund and acted as its general partner.

15. Dialectic Antithesis Partners, LP (the "Dialectic Fund") is an investment fund formed as a limited partnership under the law of the State of Delaware. At all relevant times, B. Riley Financial, through its subsidiaries, managed the Dialectic Fund and acted as its general partner.

16. Brian R. Kahn ("Kahn") is, and at all relevant times was, Franchise Group's president and chief executive officer and a member of its board of directors. He is also a longtime business associate of Bryant Riley, having collaborated with Bryant Riley or his firm on investments in Rent-A-Center, Babcock & Wilcox, and other companies. The sales of Franchise Group's common stock described herein were made to Kahn or his family members or affiliates.

## FACTS

## I. THE INSIDERS

### A. The B. Riley Defendants' Investment in Franchise Group

17. Franchise Group is a publicly traded conglomerate with a stable of familiar consumer brands, including The Vitamin Shoppe and American Freight.

18.     The B. Riley Defendants have been active investors in Franchise Group since at least 2018.  Bryant Riley served as a director of Franchise Group from September 2018 through March 31, 2020.

19.     In a May 2020 report filed with the SEC on Form 13F, B. Riley Financial disclosed holdings of 4,105,728 shares of Franchise Group common stock as of March 31, 2020, or about 11.68% of shares then outstanding.

20.     A true and complete copy of that report on Form 13F is attached as Exhibit A to this complaint.

21.     Between April 1, 2020 and the end of 2020, B. Riley Financial filed five statements with the SEC under Section 16(a) of the Act disclosing total purchases of 591,734 shares of Franchise Group's common stock and total sales or other dispositions of only 150,000 shares.

22.     True and complete copies of those statements are attached as Exhibits B through F to this complaint.

23.     The foregoing disclosures reflect that B. Riley Financial and its subsidiaries and managed funds held at least 4,105,728 shares of Franchise Group's outstanding common stock at all times between March 31, 2020 and December 31, 2020.

24.     During that same period, Franchise Group never had more than 40.1 million shares of common stock outstanding.

25.     It was not until January 2021 that B. Riley Financial retreated below the 10% line with the sale of 757,000 shares of Franchise Group's common stock.

26.     The January 2021 sale was disclosed on a Statement of Changes in Beneficial Ownership on Form 4 filed by B. Riley Financial on January 27, 2021.  B.

Riley Financial checked the "exit box" on the form, asserting that it was "no longer subject to Section 16."

27.     A true and complete copy of the statement described in paragraph 26 above is attached as Exhibit G to this complaint.

28.     Until B. Riley Financial filed the January 21, 2021 Form 4, it had never filed a statement or report with the SEC disclosing holdings of less than 10% of Franchise Group's common stock.

**B.     The B. Riley Defendants as Ten Percent Beneficial Owners**

29.     B. Riley Financial did not directly hold all of the shares of Franchise Group's common stock disclosed on its statements and reports filed with the SEC.  A portion of the shares were held indirectly, through B. Riley Financial's subsidiaries or managed funds.

30.     But B. Riley Financial "beneficially owned" all of the reported shares within the meaning of Sections 13(d) and 16 of the Act.  It beneficially owned them because it had the power to direct how the shares were voted or disposed.  *See* 17 C.F.R. §§ 240.13d-3(a), 240.16a-1(a)(1).

31.     B. Riley Financial had the unfettered power to vote and dispose of any shares of Franchise Group's common stock held in its own name.  Those shares accounted for a substantial portion of B. Riley Financial's total holdings.

32.     For example, a Form 4 that B. Riley Financial filed with the SEC on April 28, 2020 disclosed that B. Riley Financial directly held 2,005,353 shares of Franchise Group's common stock as of April 24, 2020.  *See* Ex. C.

33.     Those 2,005,353 shares worked out to about 5.71% of the 35,148,659 shares Franchise Group then had outstanding.

34.     But B. Riley Financial also held a substantial number of Franchise Group shares through its main operating subsidiary, B. Riley Securities.  According to the April 28, 2020 Form 4 described above, B. Riley Securities (then doing business as "B. Riley FBR, Inc.") beneficially owned 1,815,638 shares as of April 24, 2020, or about 5.17% of shares outstanding.  *See* Ex. C.

35.     B. Riley Financial had the ultimate power to direct the voting and disposition of all the Franchise Group shares held by B. Riley Securities because B. Riley Financial wholly owns and controls B. Riley Securities.

36.     From time to time, B. Riley Financial also held a small portion of its Franchise Group shares through the Opportunity Fund and the Dialectic Fund.  The April 28, 2020 Form 4 disclosed that the two funds beneficially owned a total of 651,471 shares at the close of April 24, 2020, or about 1.85% of shares then outstanding. *See* Ex. C.

37.     B. Riley Financial had an economic interest in only a portion of the Franchise Group shares held by the Opportunity Fund and the Dialectic Fund.  The remaining economic interest was held by the funds' passive investors.

38.     But B. Riley Financial beneficially owned all of the shares held by the two funds because it controls and manages the funds and thereby has voting and dispositive power over their holdings.

39.     B. Riley Financial manages the Opportunity Fund through BRC Partners Management GP, LLC (the fund's general partner) and B. Riley Capital Management, LLC (the fund's investment adviser).  Each of BRC Partners Management

GP, LLC and B. Riley Capital Management, LLC is a direct or indirect wholly owned and controlled subsidiary of B. Riley Financial.

40.     B. Riley Financial manages the Dialectic Fund through BR Dialectic Capital Management, LLC, the fund's general partner and investment manager. BR Dialectic Capital Management, LLC is an indirect wholly owned and controlled subsidiary of B. Riley Financial.

41.     The B. Riley Defendants' statements filed with the SEC under Section 13(d) of the Act substantiate Plaintiffs' account of the B. Riley Defendants' beneficial ownership of Franchise Group's common stock.

42.     Between March 31, 2020 and December 31, 2020, B. Riley Financial filed two Statements of Beneficial Ownership on Schedule 13D with the SEC with respect to its holdings of Franchise Group's common stock.

43.     True and complete copies of those statements are attached as Exhibits H and I to this complaint.

44.     The first such statement, filed by B. Riley Financial on April 23, 2020, disclosed that B. Riley Financial had the sole or shared power to vote and dispose of a total of 4,622,462 shares of Franchise Group's common stock, or about 13.14% of shares then outstanding.  *See* Ex. H at 2.

45.     The second statement, filed by B. Riley Financial on July 2, 2020, disclosed that B. Riley Financial had the sole or shared power to vote and dispose of a total of 4,547,462 shares of Franchise Group's common stock, or about 11.6% of shares then outstanding.  *See* Ex. I at 2.

46.     Bryant Riley also shared beneficial ownership of all of the shares of Franchise Group common stock beneficially owned by B. Riley Financial.  Bryant Riley beneficially owned those shares within the meaning of Sections 13(d) and 16 of the Act because he had or shared the power to vote and dispose of them.

47.     In addition to serving as the chairman and co-CEO of B. Riley Financial, Bryant Riley also acts as chief investment officer of the Opportunity Fund, chief executive officer of BRC Partners Management GP, LLC, chief executive officer of B. Riley Capital Management, LLC, and chief executive officer of BR Dialectic Capital Management, LLC.

48.     Each of the statements filed under Sections 13(d) or 16(a) of the Act and attached as Exhibits B through G to this complaint was signed by Bryant Riley on behalf of B. Riley Financial.

49.     And whenever those statements were jointly filed by BRC Partners Management GP, LLC, B. Riley Capital Management, LLC, or BR Dialectic Capital Management, LLC, Bryant Riley signed on their behalf as well.

50.     Bryant Riley owns by far the largest stake in B. Riley Financial. According to B. Riley Financial's most recently filed proxy statement, he beneficially owns 5,569,648 shares of B. Riley Financial's common stock, or about 20.5% of shares outstanding.  The next largest stockholding group owns just 9.0%.

51.     As a result of these offices and relationships, his substantial equity investment in B. Riley Financial, and his prestige and sway as the firm's founder and key man, Bryant Riley was able to exercise ultimate decisionmaking authority at B. Riley Financial.  His authority included the power to determine how to vote and dispose of

securities, including shares of Franchise Group's common stock, owned and managed by
B. Riley Financial, its subsidiaries, and managed funds.

52.     Once again, the SEC's files substantiate the extent of Bryant
Riley's beneficial ownership of Franchise Group's common stock.

53.     For example, the statement filed with the SEC on Schedule 13D
and attached as Exhibit I to this complaint discloses that Bryant Riley had sole or shared
power to vote and dispose of a total of 4,725,099 shares of Franchise Group's common
stock, or about 12.0% of shares then outstanding.  *See* Ex. I at 9.

54.     These 4,725,099 shares included all of the 4,547,462 shares then
held by B. Riley Financial, its direct and indirect subsidiaries, and its managed funds.
*See id.* at 2.

55.     Bryant Riley jointly filed that statement with B. Riley Financial
and its affiliates and signed it in his own name.

56.     He also signed a joint filing agreement with B. Riley Financial and
its affiliates in which he agreed that he was "responsible for . . . the completeness and
accuracy of the information concerning [him]" contained in the Schedule 13D.  *See id.* at
15.

## II.     THE TRANSACTIONS

57.     The upshot of this excursion through the SEC's records is that each
of the B. Riley Defendants beneficially owned more than 10% of the outstanding shares
of Franchise Group's common stock, and thus was subject to Section 16 of the Act, at all
relevant times.

58.     While subject to Section 16 of the Act, the B. Riley Defendants engaged in the purchases and sales of Franchise Group's common stock described in the following paragraphs.

**A.     The Purchases**

59.     On April 1, 2020, B. Riley Securities purchased 340,263 shares of Franchise Group's common stock in two separate tranches:

(a)     185,598 of such shares were purchased at a price of $12.00 per share; and

(b)     154,665 of such shares were purchased at a price of $23.00 per share.

60.     Also on April 1, 2020, the Opportunity Fund purchased 176,471 shares of Franchise Group's common stock in two separate tranches:

(a)     96,257 of such shares were purchased at a price of $12.00 per share; and

(b)     80,214 of such shares were purchased at a price of $23.00 per share.

61.     B. Riley Financial disclosed the purchases described in paragraphs 59-60 above on the Statement of Changes in Beneficial Ownership on Form 4 it filed with the SEC on April 9, 2020.  *See* Ex. B.

62.     B. Riley Financial also disclosed the purchases described in paragraphs 59-60 above on the amended Schedule 13D it filed with the SEC on April 23, 2020.  *See* Ex. H sch. B at 15.

63.     Additional purchases of the Company's common stock were made in June 2020:

(a) on June 26, 2020, B. Riley Financial purchased 50,000 shares of Franchise Group's common stock at a price of $23.25 per share; and

(b) on June 29, 2020, the Opportunity Fund purchased 25,000 shares of Franchise Group's common stock at a price of $21.4374 per share.

64. B. Riley Financial disclosed the purchases described in paragraph 63 above on the Statement of Changes in Beneficial Ownership on Form 4 it filed with the SEC on June 30, 2020. *See* Ex. D.

**B.    The Sales**

65. On July 30, 2020, B. Riley Securities sold 400,000 shares of Franchise Group's common stock at a price of $23.25 per share to a trust settled by Kahn.

66. The sale described in paragraph 65 above was made pursuant to a Share Purchase Agreement dated as of July 30, 2020 between B. Riley Securities and the Kahn trust.

67. A true and complete copy of the July 30 agreement is attached as Exhibit J to this complaint.

68. On September 2, 2020, B. Riley Securities sold 175,000 shares of Franchise Group's common stock at a price of $25.50 per share to Kahn and his wife as joint tenants by the entirety.

69. The sale described in paragraph 68 above was made pursuant to a Share Purchase Agreement dated as of September 2, 2020 between B. Riley Securities and the Kahns.

70.     A true and complete copy of the September 2 agreement is
attached as Exhibit K to this complaint.

## III.     THE "PROFIT REALIZED"

71.     Table 1 summarizes the transactions described in paragraphs 59-70
above:

| Date | Trade | Trade Party | Number of Shares | Price per Share |
|------|-------|-------------|------------------|-----------------|
| 04/01/2020 | Purchase | B. Riley Securities | 185,598 | $12.0000 |
| 04/01/2020 | Purchase | B. Riley Securities | 154,665 | $23.0000 |
| 04/01/2020 | Purchase | The Opportunity Fund | 96,257 | $12.0000 |
| 04/01/2020 | Purchase | The Opportunity Fund | 80,214 | $23.0000 |
| 06/26/2020 | Purchase | B. Riley Financial | 50,000 | $23.2500 |
| 06/29/2020 | Purchase | The Opportunity Fund | 25,000 | $21.4374 |
| 07/30/2020 | Sale | B. Riley Securities | 400,000 | $23.2500 |
| 09/02/2020 | Sale | B. Riley Securities | 175,000 | $25.5000 |

**Table 1.  Summary of the B. Riley Defendants' Transactions.**

72.     All of the purchases and sales of Franchise Group's common stock
listed in Table 1 were willingly made, garden-variety exchanges of cash and stock, and
none of them was entitled to any exemption from Section 16(b) of the Act.

73.     B. Riley Financial and Bryant Riley each had a direct or indirect
pecuniary interest in all of the transactions listed in Table 1.

74.     B. Riley Financial had a direct pecuniary interest in its June 26
purchase to the extent of 100% of the shares purchased.

75.     Because B. Riley Financial wholly owns and controls B. Riley
Securities, B. Riley Financial also had an indirect pecuniary interest in all of the trades by
B. Riley Securities to the extent of 100% of the shares purchased or sold.

76.     B. Riley Financial had an indirect pecuniary interest in the purchases by the Opportunity Fund to the extent of its indirect partnership interest in the fund and any performance-related fee it receives on the partnership's return.  The precise extent of this interest is currently unknown to Plaintiffs and will be revealed through discovery.

77.     Bryant Riley had an indirect pecuniary interest in the trades by B. Riley Financial and B. Riley Securities because he owns a substantial equity interest in B. Riley Financial and maintains de facto control of the firm through his chairmanship, his chief executive office, and his controlling equity stake.

78.     Bryant Riley also had an indirect pecuniary interest in the purchases by the Opportunity Fund to the extent of his equity interest in B. Riley Financial and his direct interest in the fund.

79.     According to B. Riley Financial's 2020 annual report filed with the SEC on March 4, 2021, Bryant Riley had a 39.2% financial interest in the Opportunity Fund as of December 31, 2020.

80.     Through their direct and indirect pecuniary interests in the transactions listed in Table 1, the B. Riley Defendants realized a profit estimated at approximately $3,668,653.50, the exact amount of which will be determined through discovery and trial.

## IV.     THE DEMAND AND RESPONSE

81.     Stockholders of the Company made demand on Franchise Group for recovery of the B. Riley Defendants' short-swing profit by letters of September 11, 2020 and November 23, 2020.

82.     Counsel for Franchise Group rejected the demands by letters of September 25, 2020 and December 23, 2020.

83.     According to counsel for Franchise Group, the shares sold by B. Riley Securities in July and September 2020 were "acquired by B. Riley FBR, Inc., an affiliate of B. Riley Financial, Inc. ('B. Riley FBR'), pursuant to a firm commitment underwriting and, as a result, may be excluded from the securities deemed beneficially owned by B. Riley for the purpose of determining whether it is a ten percent owner under Rule 13d-3(d)(4) of the Exchange Act."

84.     Counsel refers to the public offering B. Riley Securities (then doing business as "B. Riley FBR, Inc.") underwrote for Franchise Group in June 2020.

85.     The June 2020 public offering was made pursuant to a prospectus and prospectus supplement dated June 22, 2020 and June 25, 2020, respectively.

86.     Excerpts from true copies of that prospectus and prospectus supplement are attached as Exhibit L to this complaint.

87.     B. Riley Securities acted as lead underwriter for the June 2020 offering, purchasing 3,444,000 shares from Franchise Group at a price of $23.25 per share (less underwriting discounts and commissions) on or about June 30, 2020.

88.     B. Riley Securities purchased another 516,600 shares at the same price on or about August 3, 2020, pursuant to the exercise of the underwriters' customary "over-allotment" option.

89.     The 3,960,600 shares purchased by B. Riley Securities in the June 2020 offering were immaterial to the B. Riley Defendants' standing as 10% beneficial owners of Franchise Group's common stock.  None of those shares were included in

Plaintiffs' calculations of the size of the B. Riley Defendants' stake.  *See supra* paragraphs 19-28.

90.     Statements filed under Sections 13(d) and 16(a) of the Act show that the B. Riley Defendants beneficially owned more than 10% of Franchise Group's common stock without regard to any shares acquired in the June 2020 offering.

91.     For example, the amended Schedule 13D filed on April 23, 2020 reported that B. Riley Financial beneficially owned 4,622,462 shares of Franchise Group's common stock, or about 13.14% of shares outstanding, as of April 22, 2020.  *See* Ex. H at 2.  That was two months before the June 2020 offering, and B. Riley Financial reported no material dispositions of Franchise Group's common stock in the interim.

92.     Thus, even if Franchise Group's counsel were correct that the underwritten shares could "be excluded from the securities deemed beneficially owned," the B. Riley Defendants still would have beneficially owned more than 10% of Franchise Group's common stock.

93.     Counsel's letter also contended that "Rule 16a-7 of the Exchange Act exempts from Section 16(a) of the Exchange Act and Section 16(b) . . . any purchase or sale that occurs in connection with the distribution of a substantial block of securities."

94.     Rule 16a-7 exempts from Section 16 qualifying purchases and sales "made in connection with the distribution of a substantial block of securities."  17 C.F.R. § 240.16a-7(a).

95.     To qualify for the exemption, the transaction must be effected by a person "engaged in the business of distributing securities and . . . participating in good

faith, in the ordinary course of such business, in the distribution of such block of securities." *Id.* § 240.16a-7(a)(1).

96.     B. Riley Securities' sales on July 30 and September 2, 2020 enjoy no exemption because they were not made while B. Riley Securities was "participating in good faith, in the ordinary course of [an underwriting] business, in the distribution of [a] block of securities."

97.     The two sales were not part of a public offering, and no special selling efforts were made by B. Riley Securities to place the shares sold.  B. Riley Securities simply sold the shares back to Kahn, an affiliate of the issuer and a close professional associate of Bryant Riley.

98.     The prospectus and prospectus supplement for the June 2020 offering did not disclose that Franchise Group's officers, directors, or other "friends and family" might be purchasing shares in the offering.  *See* Ex. L.  Such disclosure is commonplace when an issuer reserves a portion of a public offering for its own personnel.  *See, e.g.*, Sonny Allison et al., The Initial Public Offering Handbook: A Guide for Entrepreneurs, Executives, Directors and Private Investors 66 (Merrill Corp. 2008) (explaining that "detailed disclosure will need to be provided to the SEC" when an issuer's "friends and family" are allowed "to participate as direct purchasers in the offering"), *available at* https://www.perkinscoie.com/images/content/1/3/v2/13610/ AllisonHallMcsheaNoCrop.pdf (last visited July 15, 2021).

99.     The omission of this disclosure from the prospectus indicates that the sales to the Kahns were not made as part of the June 2020 offering.  They were

instead opportunistic sales of stock from B. Riley Securities' own glutted inventory to a reliable client of the firm.

100.    The details of the September 2020 sale also cannot be squared with the terms of the Underwriting Agreement B. Riley Securities signed with Franchise Group on June 25, 2020.

101.    True and complete copies of the June 25, 2020 Underwriting Agreement and its July 25, 2020 amendment, which Plaintiffs refer to collectively as the "Underwriting Agreement", are attached as Exhibits M and N to this complaint.

102.    Section 3 of the Underwriting Agreement memorialized that B. Riley Securities and the other underwriters "propose to make a public offering of their respective portions of the Shares as soon after the Registration Statement and this Agreement have become effective as in B. Riley FBR's judgment is advisable." Ex. M at 16.

103.    The same section of the agreement adds that "the Shares are to be offered to the public initially at $23.25 a share." *Id.*

104.    In contrast to these plain terms, B. Riley Securities sold the September 2020 block of stock to the Kahns more than two months after the June 2020 offering closed, and nearly a month after the closing of the underwriters' over-allotment option.

105.    What is more, B. Riley Securities charged the Kahns $25.50 per share for the stock, a premium of nearly 10% to the $23.25 per share price at which the shares were supposed "to be offered to the public initially." *Id.*

106.    Finally, B. Riley Securities could not have made the September sale as part of "the distribution of [a] block of securities" because the block in question had already been sold by the time the Kahns agreed to buy the September shares.

107.    The underwriters of the June 2020 offering had exhausted their initial allotments of stock long before September 2020.  That is why they needed to exercise the over-allotment option in early August.

108.    But the plain terms of the Underwriting Agreement entitled the underwriters to exercise the over-allotment option only to cover *prior* sales of shares made to satisfy investor demand in excess of the first batch of shares acquired in June. *See* Ex. N at 1 ("Additional Shares may be purchased as provided in Section 4 hereof *solely for the purpose of covering sales of shares in excess of the number of the Firm Shares.*" (emphasis added)).

109.    Therefore, any shares B. Riley Securities acquired through the exercise of the over-allotment option on August 3, 2020 could only have been delivered to cover sales that had already been made.  Any shares sold to the Kahns in September 2020 could not have come from that block.  *Cf.* 17 C.F.R. § 240.16a-7(a)(2)(i) (limiting the exemption to transactions in securities that were "[p]art of such block," i.e., the block of distributed securities).

110.    In short, the documentary record establishes that B. Riley Securities was not "engaged in the business of distributing securities and . . . participating in good faith, in the ordinary course of such business, in the distribution of [a] block of securities" when it made the July or September 2020 sales to the Kahns.  There is accordingly no exemption for those sales under Rule 16a-7.

111.     Although Plaintiffs allege the foregoing facts in support of their

claim that the B. Riley Defendants' sales are unshielded by any exemption, Plaintiffs do

not assume the burden of disproving the exemption.

112.     The burden of proving an exemption from liability lies with the

defendant, and Plaintiffs will put the B. Riley Defendants to their proof.  *See Rosen ex*

*rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 194 F. Supp. 2d 224, 228

(S.D.N.Y. 2002).


**SOLE CLAIM FOR RELIEF:**
**DISGORGEMENT UNDER 15 U.S.C. § 78p(b)**
**(AGAINST EACH B. RILEY DEFENDANT)**

113.     Plaintiffs reallege and incorporate by reference the allegations in

paragraphs 1-112 above.

114.     Section 16(b) of the Securities Exchange Act of 1934, as amended,

reads in pertinent part as follows:

> For the purpose of preventing the unfair use of information which
> may have been obtained by [a 10 percent] beneficial owner,
> director, or officer by reason of his relationship to the issuer, any
> profit realized by him from any purchase and sale, or any sale and
> purchase, of any equity security of such issuer (other than an
> exempted security) or a security-based swap agreement involving
> any such equity security within any period of less than six months,
> unless such security or security-based swap agreement was
> acquired in good faith in connection with a debt previously
> contracted, shall inure to and be recoverable by the issuer,
> irrespective of any intention on the part of such beneficial owner,
> director, or officer in entering into such transaction of holding the
> security or security-based swap agreement purchased or of not
> repurchasing the security or security-based swap agreement sold
> for a period exceeding six months.  Suit to recover such profit may
> be instituted at law or in equity in any court of competent
> jurisdiction by the issuer, or by the owner of any security of the
> issuer in the name and in behalf of the issuer if the issuer shall fail
> or refuse to bring such suit within sixty days after request or shall

> fail diligently to prosecute the same thereafter; but no such suit
> shall be brought more than two years after the date such profit was
> realized.

15 U.S.C. § 78p(b).

115.    Each B. Riley Defendant beneficially owned more than 10% of the outstanding shares of Franchise Group's common stock at all relevant times.

116.    While subject to Section 16(b) of the Act as a 10% beneficial owner, each B. Riley Defendant purchased and sold Franchise Group's equity securities as further described herein.

117.    The sales of Franchise Group's equity securities described herein occurred within less than six months of, and at higher prices than, the purchases of Franchise Group's equity securities described herein.

118.    Each B. Riley Defendant had a direct or indirect pecuniary interest in all of Franchise Group's equity securities purchased and sold as described herein.

119.    Under the "lowest-in, highest-out" method for computing realized profit pursuant to Section 16(b) of the Act, the B. Riley Defendants realized a recoverable profit estimated at approximately $3,668,653.50 from their transactions in Franchise Group's equity securities described herein.

120.    Under Section 16(b) of the Act, the profit realized by the B. Riley Defendants as described in paragraph 119 above inured to Franchise Group and remains Franchise Group's lawful property, recoverable by Plaintiffs in its stead, Franchise Group having failed to seek recovery of the same despite due and timely demand.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all questions so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court for judgment:

(a)     Requiring the B. Riley Defendants to account for and pay over to Franchise Group the short-swing profit realized and retained by them in violation of Section 16(b) of the Act in an amount not less than $3,668,653.50, together with appropriate pre- and post-judgment interest and the costs of this suit;

(b)     Awarding Plaintiffs their costs and disbursements including reasonable attorney's, accountant's, and expert witness fees; and

(c)     Granting Plaintiffs such further relief as the Court deems just and proper.


Dated: July 15, 2021

/s/ James A. Hunter

David Lopez, Esq.
LAW OFFICES OF DAVID LOPEZ
171 Edge of Woods Road, P.O. Box 323
Southampton, New York  11969-0323
Tel: (631) 287-5520
Fax: (631) 283-4735
Email: DavidLopezEsq@aol.com

James A. Hunter
42 Stagecoach Road
Pipersville, Pennsylvania  18947
Tel: (484) 437-5935
Fax: (646) 462-3356
Email: hunter@hunterkmiec.com

Miriam Tauber
MIRIAM TAUBER LAW PLLC
885 Park Avenue # 2A
New York, New York  10075
Tel: (323) 790-4881
Email: MiriamTauberLaw@gmail.com

*Attorneys for Plaintiffs*